IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| GLENN TRACY HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 321-071 |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff protectively applied for DIB and SSI on October 15, 2012, and he alleged an amended disability onset date of September 6, 2012. Tr. ("R."), pp. 463-75, 515, 1054, 1220. Plaintiff was forty years old at his alleged disability onset date and was forty-eight years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under

consideration.  R. 463, 1077.  Plaintiff alleged disability based on the following conditions:  back problems, bone spurs, knee problems, high blood pressure, obesity, depression and opiate addiction.  R. 533.  Plaintiff completed high school and some college, (R. 534, 639, 1058), and prior to his alleged disability date, had accrued a history of past relevant work that included: cashier, warehouse manager, industrial truck operator, industrial cleaner - supervisor, pallet manager, sales representative, telephone solicitor, supervisor, and material handler.  R. 520, 1074-75.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration.  R. 238-45, 248-55.  Plaintiff requested a hearing before an ALJ, (R. 256-57), and the ALJ held two hearings in 2015.  R. 65-124.  The ALJ then issued an unfavorable decision dated October 29, 2015, in which he determined Plaintiff could perform his past relevant work as a cashier, sales representative, telephone solicitor, and supervisor, and therefore concluded Plaintiff was not disabled.  R. 221-22.  The Appeals Council ("AC") vacated the October 29th decision and remanded the case to the ALJ to "reconcile the inconsistencies between the [RFC] assessment and the medical opinion evidence," as well as state the probative weight afforded to the opinion of John C. Whitley, III, Ph.D.  R. 231.

On remand, the ALJ held a hearing on December 12, 2017.  R. 37-64.  On April 27, 2018, the ALJ again issued an unfavorable decision.  R. 12-36.  The AC denied Plaintiff's request for review, (R. 1-5), and Plaintiff brought suit in this Court, Hall v. Saul, CV 318-083, doc. no. 1 (S.D. Ga. Nov. 27, 2018).  On December 11, 2019, the Court reversed the decision of the Commissioner and remanded the case for further proceedings at the Social Security Administration because Plaintiff's treating psychiatrist had not been identified as such and the ALJ had not stated what weight had been assigned to this treating physician's opinion.  See R.

2

1109-12; 1115-22.

Upon remand from this Court, the Commissioner assigned the case to a different ALJ, (R. 1111), who held a hearing on February 4, 2021.  R. 1087-1108.  On February 26, 2021, the ALJ issued a decision finding Plaintiff not disabled.  Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since September 6, 2012, the amended alleged onset date (20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.).

2. The claimant has the following severe impairments:  multi-joint osteoarthritis; degenerative disc disease; degenerative joint disease of the knees; obesity; depressive, dysthymic and personality disorders; and opioid dependence in sustained remission (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant is limited to no more than occasional balancing, stooping, kneeling, crouching, and climbing of ramps and stairs.[1] The claimant should perform no crawling and should not climb ropes, ladders, or scaffolds.  The claimant should not be involved with workplace hazards, such as moving mechanical

---

[1]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

parts and unprotected heights. The claimant may perform no more than occasional operation of foot controls with both lower extremities. The claimant should not work on uneven terrain. The claimant should not perform commercial driving. The claimant can perform no more than 30 minutes of uninterrupted standing or walking. The claimant requires use of [a] cane for any standing and/or walking. The claimant is limited to simple, routine, repetitive tasks/instructions. The claimant should have no more than occasional interaction with co-workers, supervisors, and the public. The claimant should face no more than occasional changes [to] workplace environment/routine. The claimant cannot perform assembly line, fast paced, or high production quota work. The claimant can perform no more than 2 hours of uninterrupted concentration, persistence, or pace without a work break. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including shipping/receiving weigher, leader tier, and inspector/packer (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from September 6, 2012, through the date of the ALJ's decision, February 26, 2021 (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 1057-77.

When the AC denied Plaintiff's request for review of the ALJ's February 26, 2021 decision, R. 1045-50, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand.

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211

4

(11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

5

## III.   DISCUSSION

Plaintiff argues:  (1) the ALJ erred in failing to follow the Regulations that existed prior to March 27, 2017 when evaluating the opinions of treating psychiatrist Robert Shuman, M.D., and (2) the ALJ performed an inadequate evaluation of evidence in determining Plaintiff's RFC. See Pl.'s Br., doc. no. 13; Pl.'s Reply, doc. no. 17.   The Commissioner maintains the ALJ's decision should be affirmed.   See Comm'r's Br., doc. no. 16.   Particular to Plaintiff's first argument, he explicitly states, "The focus is not on whether substantial evidence supports the ALJ's evaluation of Dr. Shuman's opinions, rather, the issue is whether the ALJ committed an error of law in failing to follow the specific Regulations that existed prior to March 27, 2017 in the evaluation of Dr. Shuman's opinions."  Pl.'s Reply, pp. 1-2.

### A.   The ALJ Applied the Correct Version of the Applicable Regulations

#### 1.   Regulations for Claims Filed Prior to March 27, 2017

For claims filed prior to March 27, 2017, as is the case here, in the Eleventh Circuit, a treating physician's opinion must be given substantial weight.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (per curiam).   Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).   "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011); see also Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (explaining Commissioner not obligated to agree with a medical opinion if evidence tends toward a contrary conclusion).

Stated otherwise, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).  Courts will not "second guess" the ALJ's determination of the treating physician's opinion, so long as the ALJ articulates specific justification for it.  Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  Additionally, the prior version of the Commissioner's regulations required that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists.  See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5), 416.927(c)(1)-(2), (5).

However, the weight afforded to a non-examining physician's opinion depends, inter alia, on the extent to which clinical findings support it and consistency with other evidence.

Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873 (11th Cir. 2011) (*per curiam*).  State agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record.  Id. at 873-74 (finding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion that was inconsistent with treatment records and claimant's ability to work during relevant time period); see also SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996)[2] (findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review).  Importantly, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.  SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996)[3]; see also 20 C.F.R. §§ 404.1527(d), 416.927(d).

## 2.   Regulations for Claims Filed After Implementation of 2017 Revision

Pursuant to the revised regulations, applicable to claims filed on or after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Elimination of the

---

[2]SSR 96-6p was rescinded when the Commissioner's rules were revised in 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5845 (Jan. 18, 2017).

[3]SSR 96-5p was also rescinded when the Commissioner's rules were revised in 2017.  See id.

treating source rule is intended to "eliminate confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as discourage courts from reweighing the evidence in violation of the deferential substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors.  Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 897 (11th Cir. 2022); 20 C.F.R. §§ 404.1520c(c) & 416.920c(c)(1)-(c)(5).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2); Uresti v. Comm'r of Soc. Sec., No. 2:20-CV-367-MAP, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021).  "Under the new rule, the [ALJ] will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency."  Mackey v. Saul, 2:18-cv-02379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2)), adopted by, 2020 WL 376247 (D.S.C. Jan. 23, 2020).  In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record.  20 C.F.R. §§ 404.1520c(c)(1)-(2) & 416.920c(c)(1)-(2).  The 2017 revision eliminated the treating-physician rule and prohibits ALJs from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight to any medical opinion(s)."  Harner, 38 F.4th at 897, 898 (citations omitted).

9

### 3. The ALJ Correctly Applied the Pre-2017 Version of the Regulations

The Court is not persuaded by Plaintiff's argument that the ALJ committed an error of law by failing to follow the pre-March 27, 2017 regulations. As initial matter, the Court recognizes Plaintiff is not challenging whether the ALJ's evaluation of Dr. Shuman's opinion was based on substantial evidence. Pl.'s Br., p. 15[4] ("The ALJ did not use the required Regulations in determining the weight to give the opinion of Dr. Shuman.); Pl.'s Reply, pp. 1-2 ("The focus is not on whether substantial evidence supports the ALJ's evaluation of Dr. Shuman's opinions, rather, the issue is whether the ALJ committed an error of law in failing to follow the specific Regulations that existed prior to March 27, 2017 in the evaluation of Dr. Shuman's opinions.") Thus, the Court's analysis is narrowed to determining whether the correct regulations were applied. See Cain v. Soc. Sec. Admin., Comm'r, No. 22-10460, 2022 WL 17076735, at *2 (11th Cir. Nov. 18, 2022) (*per curiam*) (explaining that when challenge is to whether treating physician rule applies but no substantive challenge raised to assessment of doctor's opinion under proper version of regulation, the ALJ's reasons for discounting opinion need not be addressed in detail).

Plaintiff's argument consists of citing the pre-2017 version of the regulation for evaluating medical opinions and then faulting the ALJ for not "giv[ing] positive consideration" to those factors. However, the ALJ was only required to consider the factors, not consider them positively. Consistent with the pre-2017 regulation and body of law developed in the Eleventh Circuit regarding the treating physician's rule, the ALJ explicitly articulated good cause for discounting Dr. Shuman's opinions to the point that he gave the

---

[4]The Court cites to the page number at the top of the page that is assigned by the CM/ECF filing system.

opinions no weight.[5]  R. 1073 (citing R. 816-61, 926, 935, 959, 980, 1034-37, 1039, 1288-92).

The Court starts with the observation that the ALJ considered the length, frequency, nature and extent of the treatment relationship, as explained in the lengthy and sifting analysis of Plaintiff's visits with Dr. Shuman dating back to 2016, (R. 1067), through 2017 (R. 1068, 1073), as well as routine visits from 2018 through 2020 (R. 1068-69).  The ALJ contrasted Dr. Shuman's more restrictive limitations with Plaintiff's routine follow-up visits, Plaintiff's activities of daily living which included caring for his grandmother, interacting with friends, managing/selling property, performing household chores, performing music for money, attending church, and feeling better when taking his medication.  R. 1073 (citing B27F (R. 1288-92)).  Furthermore, the ALJ discounted Dr. Shuman's more restrictive opinions because of a conservative treatment plan that included reducing the dosage on Plaintiff's medication, with plans to reduce it further, (R. 1073, 1289), and noted Dr. Shuman

---

[5]The ALJ summarized:

> The claimant's treating physician, Robert Shu[]man, III, M.D., opined the claimant has moderate limitations in understanding, remembering or applying information; a marked limitation[] in his ability to sustain concentration and persistence; and a moderate limitation[] in social interactions and adaptation (B22F).  He also opined the claimant had a substantial loss in his ability to understand, remember, and carry out simple instructions, in his ability to make appropriate judgments commensurate with the functions of unskilled work, in his ability to respond appropriately to others in work situations, and in his ability to deal with changes (B22F).  Dr. Shurman [sic] also noted that he should qualify for disability this date (B23F/2).

R. 1073; see also Comm'r's Br., pp. 7-8 (citing R. 1034-36 (summarizing Dr. Shuman's opinions, to include moderate limitations in "Understanding and Memory," "Social Interaction," "Adaptation" and multiple requirements for following instructions and completing a normal work week, as well as marked limitations in Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision; and work in coordination with or in proximity to others without being unduly distracting by them)).

did not address Plaintiff's substance abuse issues, even though he had noted early on in their treatment relationship in 2017 that many of Plaintiff's "issues were driven by complications of his pain medications and Xanax." R. 1023, 1073; see also R. 1068-69 (providing further analysis of Dr. Shuman's treatment relationship with Plaintiff (citing R. 1023-24, 1039-41)).

In accordance with the body of law developed around the treating physician's rule based in the pre-2017 regulation, the ALJ gave explicit reasons for assigning no weight to Dr. Shuman's opinions placing more restrictive conditions than those used to formulate Plaintiff's RFC. R. 1073. The ALJ explained the medical evidence did not support marked limitations in Plaintiff's mental functioning, and the severe restrictions were not supported by Dr. Shuman's own narrative documentation. R. 1073. The administrative decision contains extensive descriptions of that evidence. R. 1061-73. Plaintiff does not challenge the ALJ's treatment of that documentation, but instead only suggests such information was not considered under the proper regulation. The record does not support Plaintiff's argument.

The ALJ's opinion cites the pre-2017 regulations. R. 1060 ("The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927."). The ALJ was also clearly aware of Dr. Shuman's status in the hierarchy of medical opinions, as well as the specialization of Dr. Shuman's treatment, because Dr. Shuman was identified as Plaintiff's "treating physician" and "treating psychiatrist." R. 1073. As discussed above, the ALJ discounted Dr. Shuman's opinions for good cause and explained why he afforded them no weight. The Eleventh Circuit has recognized that citation to the proper regulation, recognition of an opinion coming from a "treating source," and assigning weight to a medical opinion supports a finding of using the pre-2017

12

regulations, as the revised regulations removed those requirements.  Planas ex rel. A.P. v. Comm'r of Soc. Sec., 842 F. App'x 495, 498 (11th Cir. Jan. 27, 2021) (*per curiam*) ("The ALJ not only cited the proper regulation, but also articulated [his] analysis in a manner wholly consistent with the applicable regulation.").

In sum, the ALJ applied the proper regulations in evaluating Dr. Shuman's opinions and decided they should be afforded no weight.  Plaintiff offers no case law in support of the proposition that an ALJ must "positively" consider any particular aspect of a treating physician's opinion.  Indeed, as discussed above, the case law is to the contrary and allows discounting a treating physician's opinion for good cause.  Winschel, 631 F.3d at 1179; Phillips v. Barnhart, 357 F.3d at 1241; Lewis, 125 F.3d at 1440 (11th Cir. 1997); Sryock, 764 F.2d at 835.  The ALJ provided a thorough and sifting evaluation of multiple medical opinions covering an extensive period of time and articulated detailed and specific justifications for rejecting not only Dr. Shuman's opinions, but as discussed in the next section, portions of opinions from other doctors as well.  Both the AC, (R. 1045-46), and the Commissioner in her brief, (Comm'r's Br. pp. 13-21), also provide summaries of the ALJ's decision and references to the record which amply support the conclusion the ALJ applied the pre-2017 regulations and properly explained his reasons for discounting the opinions Dr. Shuman.  This Court concludes the correct version of the regulations was applied and will not "second guess" the ALJ's determination to afford no weight to Dr. Shuman's opinions in light of the clearly articulated reasons for doing so.  See Hunter, 808 F.3d at 823.

B.     **The RFC Is Supported by Substantial Evidence**

1.     **Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to

return to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  RFC is defined

in the regulations "as that which an individual is still able to do despite the limitations caused

by his or her impairments."  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004)

(citation omitted).   Courts have described RFC as "a medical assessment of what the

claimant can do in a work setting despite any mental, physical or environmental limitations

caused by the claimant's impairments and related symptoms."  Watkins v. Comm'r of Soc.

Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (per curiam).  Limitations are divided into

three categories:  (1) exertional limitations that impact the ability to perform the strength

demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing and pulling; (2)

non-exertional limitations that impact the ability to meet non-strength job demands, i.e.,

tolerating dust and fumes, appropriately responding to supervision, co-workers and work

pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a

combination of exertional and non-exertional limitations.  Baker v. Comm'r of Soc. Sec., 384

F. App'x 893, 894 (11th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1569a(b)-(d)).

2.     **The ALJ Properly Evaluated the Medical Opinions of Record in
       Formulating the RFC**

Plaintiff argues the ALJ did not properly consider the opinions of Dr. Shuman and two

consultative psychologists, John C. Whitley, III, Ph.D., and Michael P. Rose, Ph.D.   In

particular, Plaintiff challenges the ALJ's conclusion Plaintiff has only a moderate limitation

in (1) understanding, remembering, or applying information, (2) interacting with others, and

14

(3) concentrating, persisting or maintaining pace.  Pl.'s Br., pp. 15-16; Pl.'s Reply, pp. 4-5.

Having considered these moderate limitations, the ALJ's RFC limited Plaintiff to (1) simple,

routine, repetitive tasks/instructions, (2) no more than occasional interaction with co-

workers, supervisors, and the public, (3) no more than occasional changes [to the] workplace

environment/routine, and (4) no more than 2 hours of interrupted concentration, persistence,

or pace without a work break.  R. 1060.

According to Plaintiff, the RFC should have included a substantial loss of ability to

understand, remember, and carry out simple instructions; no interaction with co-workers,

supervisors, and the public; a noted vulnerability to decompensate under excessive stress,

demands, and changes in a work setting; and a marked impairment for maintaining

concentration and focus for an extended period of time and providing an adequate level of

activity.[6]  Pl.'s Br., p. 17.  Plaintiff argues that the addition of any one of these limitations to

the RFC would have supported a hypothetical to the VE of an "off-task" individual who

would be precluded from all work.  Id.; R. 1106 (presenting hypothetical to VE of "off-task"

individual and receiving response that such individual would be precluded from all work).

According to Plaintiff, the ALJ "cherry picked" only select portions of the opinions of Drs.

Whitley and Rose, without consideration of Dr. Shuman's opinions, to craft an RFC not

supported by substantial evidence.  Pl.'s Reply, pp. 4-5.

---

[6]As the ALJ explained a marked limitation as a seriously limited ability to function,
independently, appropriately, or effectively on a sustained basis.  R. 1058; see also 20 C.F.R.
Part 404, Subpt. P, App. 1 § 12.00F(2)(d).  A moderate limitation is defined as a fair ability to
function independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. Part 404,
Subpt. P, App. 1 § 12.00F(2)(c).

First, Plaintiff's repeated references to the opinions of Dr. Shuman to argue for limitations more restrictive than those opined by Drs. Whitley and Rose, who performed consultative examinations, do not carry the day because as discussed extensively above, the ALJ properly applied the pre-2017 regulations in evaluating Dr. Shuman's opinions and articulated the reasons for discounting them. After validly discounting the opinions of Dr. Shuman, the ALJ could still rely on other medical opinions, non-opinion medical evidence, and other evidence in the record to formulate Plaintiff's RFC. See Borges v. Comm'r of Soc. Sec., 771 F. App'x 878, 881-82 (11th Cir. 2019) (per curiam) (citations omitted); see also Kirby v. Soc. Sec. Admin., Comm'r, 819 F. App'x 828, 832-34 (11th Cir. 2020) (per curiam) (affirming ALJ crediting a state agency psychological consultant opinion over that of treating psychiatrist where ALJ articulated good cause for discounting treating doctor and explained consultant's opinion consistent with medical records from relevant time period).

Second, the record shows, as recognized by the ALJ, both Drs. Whitley and Rose opined Plaintiff had limitations interacting with others. Dr. Rose opined in a February 2013 consultative evaluation considered as a "marginally valid account" of Plaintiff's functioning, Plaintiff had a marked level of impairment for (1) maintaining concentration and focus for an extended period of time, (2) providing an adequate level of productivity, (3) interacting with others, (4) tolerating everyday work stress, and (5) adapting and managing himself. R. 714, 1072. Contrary to Plaintiff's argument, (Pl's Br., p. 16), the ALJ did mention Dr. Rose and his opinions of marked limitations, but the ALJ also explained why he gave only partial weight to them, including contradictions within the examination, reference to Plaintiff's treatment records which showed Plaintiff was alert, orientated, and no longitudinal evidence of sustained attention deficit. R. 1065-66 (citing R. 710-14), 1072. The ALJ also relied on

Plaintiff's objective examination findings, conservative treatment, Plaintiff's interactions with the others in his daily activities, and Dr Rose's over-reliance on Plaintiff's subjective concerns and presentation.  R. 1072 (citing, *i.e.*, R. 712 ("There were no reports of any history of problems getting along with coworkers, supervisors or the public."); R. 714 ("This assessment should be read as a marginally valid account of Mr. Hall's history and current level of cognitive functioning, as there was evidence of a mild to moderate level of intentional bias.").

Furthermore, Plaintiff's argument that the ALJ should not have discounted Dr. Rose's opinions from a two-hour examination in favor of Dr. Whitley's "Clinical Interview" also fails because an ALJ may consider medical opinions (or portions thereof),[7] including consulting source opinions, when those opinions are supported by the record.  See Borges, 771 F. App'x at 881 (citations omitted).  The ALJ validly explained why he discounted Dr. Rose's opinion of marked limitations and as discussed below, explained why he gave substantial weight to the opinions of Dr. Whitley, which were supported by the record.

In formulating the RFC, the ALJ afforded substantial weight to the opinions of Dr. Whitley.  R. 1072-73.  Plaintiff faults the ALJ for "not accurately reporting" Dr. Whitley's

---

[7]There is no requirement that an ALJ accept or reject any medical opinion in toto.  To the contrary:

> . . . [N]othing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions.  The regulations define a "medical opinion" simply as multiple statements from a medical source that reflects a judgment about the claimant's impairments.  A medical source can provide multiple statements regarding a claimant's impairments, and the weight to be afforded each a medical source's opinions may differ based on the factors set forth in § 404.1527(c).

Hand v. Soc. Sec. Admin., Comm'r, 786 F. App'x 220, 225-26  (11th Cir.  2019) (*per curiam*) (citations omitted).

opinion concerning interacting with others because the doctor stated Plaintiff would function best with minimal interaction with others in a work setting and would be vulnerable to decompensate under excessive stress, demands, and changes in the work setting.  R. 739, 1073.  According to Plaintiff's argument, unsupported by any legal authority, "minimal" interaction is more limiting than the moderate limitation used to formulate the RFC, and Plaintiff's vulnerability to decompensate shows he is more limited than the RFC allows. Pl.'s Br. p. 16.

First, that Dr. Whitley stated Plaintiff would function "best" is not equivalent to requiring minimal interaction to function at all.  See Whitten v. Soc. Sec. Admin., Comm'r, 778 F. App'x 791, 796 (11th Cir. 2019) (per curiam) (explaining medical statement that claimant would function "best" in well-spaced work setting not the same as well-spaced setting required to function at all and affirming leaving such limitation out of RFC).  Second, the ALJ sufficiently accounted for Plaintiff's limitations in interacting with others, including supervisors, when he restricted Plaintiff to occasional interaction with others.[8]  See Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 542 (11th Cir. 2016) (per curiam) (finding moderate limitations in taking criticism from supervisors adequately accounted for in RFC limiting claimant "short, simple, instructions" and "only occasional contact with co-workers and the general public on routine matters").

---

[8]As the ALJ explained, the limitation on this point is also supported by the opinions of state agency physicians John Cooper, Ph.D., and Ndiya Nkongho, Ph.D., to whose opinions the ALJ accorded partial weight.  R. 1071.  Dr. Cooper opined Plaintiff "[w]ould likely perform better in a more socially isolative position."  R. 135.  Dr. Nkongho opined, "Claimant is able to work with others in employment that minimizes regular contact with large groups of co-workers and did not require problem-solving work with the public.  The claimant can work in a workplace environment requiring brief and superficial contact with others."  R. 170.

Moreover, limiting Plaintiff to two hours of uninterrupted concentration, persistence, or pace to perform simple, routine, repetitive tasks/instructions sufficiently accounted for moderate difficulties with attention and concentration.[9]   See Sampson v. Comm'r of Soc. Sec., 694 F. App'x 727, 739 (11th Cir. 2017) (per curiam) (although remanding for consideration of additional medical opinion, affirming that moderate limitations in social functioning and concentration, persistence, or pace accounted for by limitation to simple and routine tasks involving no more that occasional interaction with people); Miller v. Astrue, No. 2:09-cv-650, 2011 WL 1598731, at *9 (M.D. Fla. Apr. 28, 2011) (affirming ALJ's translation of "moderate difficulties" in concentration, persistence, or pace to limitation to routine, repetitive tasks).

Apart from the unfounded and legally unsupported allegation the ALJ misstated Dr. Whitley's findings and the ALJ did not consider Dr. Whitley's findings in light of the discounted opinions of Drs. Shuman and Rose, Plaintiff does not challenge the other reasons cited by the ALJ in determining Dr. Whitley's opinions should be accorded substantial weight.  The ALJ explained the opinions were consistent with Dr. Whitley's examination, Plaintiff's longitudinal treatment records, and portions of Dr. Rose's opinion.  R. 1072-73 (citing, i.e., R. 737 ("He does not receive any current psychotherapy. . . . He denied psychiatric admission.  Hs medication includes alprazolam 1 mg."); R. 739 ("His current ability to sustain effort, focus, pace, and persistence for work task would be moderately impacted by his emotional issues.").  The ALJ also concluded Dr. Whitley's opinions were consistent with Plaintiff's conservative, routine treatment and reported activities of daily life.

_____

[9] The ALJ also included the limitation that Plaintiff cannot perform assembly line, fast paced, or high production quota work.  R. 1060.

R. 1073 (citing, *i.e.*, R. 1289-90 (recording Plaintiff's reports of caring for grandmother, selling properties, performing music for money, attending church, and responding feeling better on medication).

In sum, following an extremely thorough and comprehensive review of the record evidence, the ALJ properly formulated Plaintiff's RFC and sufficiently explained his reasoning for the limitations imposed in the RFC. This Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59. That Plaintiff envisions a different result is *possible* does not mean the Commissioner's decision must be reversed. Thus, the Court turns to the remaining allegation of error regarding the VE's testimony upon which the ALJ relied to determine there were jobs in the national economy Plaintiff could perform.

### C.      The ALJ Properly Relied on the Testimony of the VE

In an argument that dovetails with the now-discredited argument that the ALJ erred in formulating the RFC, Plaintiff contends the ALJ's reliance on the VE's testimony is not supported by substantial evidence. Plaintiff argues that because the hypothetical upon which the ALJ relied did not include the more restrictive limitations which, as discussed in detail above, Plaintiff believes should have been incorporated into the RFC, the VE's testimony cannot support the ALJ's decision there are jobs in the national economy Plaintiff can perform. Pl.'s Br., p. 17.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must

determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question [to the VE] that accounts for all of the claimant's impairments." Barchard v. Comm'r of Soc. Sec., 628 F. App'x 685, 687 (11th Cir. 2015) (citation omitted); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (same). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

As discussed above, the ALJ articulated valid reasons for not incorporating into the RFC the more restrictive and marked limitations proposed by Drs. Shuman and Rose. Thus, the ALJ did not have to incorporate these restrictions into the hypotheticals presented to the VE. See Crawford, 363 F.3d at 1161; see also Sampson v. Comm'r of Soc. Sec., 694 F. App'x 727, 739 (11th Cir. 2017) (per curiam) ("Because the substantial evidence supports the ALJ's decision to give little weight to the opinions of [multiple doctors], the ALJ did not need to incorporated their assessments into the RFC." ).

The characteristics of the person in the second hypothetical presented by the ALJ to the VE, and relied upon by the ALJ to conclude Plaintiff was not disabled, incorporated the supported restrictions in Plaintiff's RFC, including limitations to (1) simple, routine, repetitive tasks/instructions, (2) no more than occasional interaction with co-workers, supervisors, and the public, (3) no more than occasional changes [to the] workplace environment/routine, and (4) no more than 2 hours of interrupted concentration, persistence, or pace without a work break. R. 1060, R. 1103-05. The restrictions for which Plaintiff argues regarding an "off-

task" hypothetical worker were not supported by the record, (R. 1106), and thus the ALJ did not have to rely on the more restrictive hypothetical to make the disability determination. See Borges, 771 F. App'x at 883.   In sum, because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics as determined by the ALJ in formulating the RFC, the ALJ's reliance on the VE testimony was proper.  See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

IV.    **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 20th day of December, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA